IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INFORMATION PROTECTION AND AUTHENTICATION OF TEXAS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SYMANTEC CORP., et al,<br><br>    Defendants. | Civil Action No. 2:08-cv-00484<br>Honorable David J. Folsom |
| SYMANTEC CORP. and PC TOOLS, INC.,<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>INFORMATION PROTECTION AND AUTHENTICATION OF TEXAS, LLC,<br><br>    Counterclaim Defendant,<br><br>and GLOBAL INNOVATION TECHNOLOGY HOLDINGS, LLC,<br><br>    Third Party Defendant. | |

**EMERGENCY MOTION OF DEFENDANT SYMANTEC
CORPORATION TO ENJOIN PLAINTIFF AND THIRD PARTY
DEFENDANT FROM LITIGATING A LATER-FILED AND
<u>DUPLICATIVE ACTION AND FOR EXPEDITED CONSIDERATION</u>**

CH\1086424.10

## I.     INTRODUCTION

Plaintiff Information Protection and Authentication of Texas, LLC ("IPAT") has filed two actions in two different jurisdictions alleging infringement of the same two patents. IPAT *first* filed this patent infringement action in the Eastern District of Texas against primarily software manufacturers, including Defendant Symantec Corporation ("Symantec"). Over two weeks later, IPAT and Global Innovation Technology Holdings, LLC ("Global")[1] filed a second action in the Southern District of Florida against computer hardware manufacturers – most (if not all) of which are customers of one or more of the defendant software manufacturers in this action, including Symantec – alleging infringement of the same two patents.[2] Counsel for IPAT and Global then informed Symantec's counsel that to the extent software of the defendants accused in this action is bundled with the computers manufactured by the defendants in the Florida action, such software is at issue in the Florida action as well. Flagel Decl., ¶ 3. Thus, the very same Symantec products may be at issue in two distinct patent infringement actions involving the exact same two patents – this first filed action in Texas in which Symantec is a named defendant, and the later-filed action in Florida in which Symantec has not been named a defendant.

---

[1] IPAT alleges that Global is the exclusive licensee or co-assignee of the patents-at-issue.

[2] *See* Declaration of Mark A. Flagel in Support of Emergency Motion of Defendant Symantec to Enjoin Plaintiff and Third Party Defendant from Litigating a Later-Filed and Duplicative Action and for Expedited Consideration ("Flagel Decl.") Ex. A (*Global Innovation Tech. Holdings, LLC and Information Protection and Authentication of Texas LLC v. Acer America Corp., et al*, No. 09-20127 (S.D. Fla. filed Jan. 15, 2009) (Moreno, Ch. J.)), ¶¶ 20-31. The patents-at-issue were initially assigned from the patents' inventor, Addison Fischer, to Global, and then to IPAT. In its Florida complaint, IPAT asserts that "Global is the exclusive licensee with respect to the [Florida] Defendants of the '591 and 717 patents," and included Global as a plaintiff in that action. *See id.*, ¶ 1; see also *id.*, ¶ 19 ("[IPAT and Global] are the assignee of all rights, title and interest in and to the '591 and '717 patents"). Symantec has added Global as a defendant to this action, and asserted counterclaims against IPAT. Dkt. 112: Answer, Affirmative Defenses, Counterclaims and Third Party Complaint of Symantec Corporation and PC Tools, Inc.

The court in the Florida action recently issued its Scheduling Order outlining a highly accelerated schedule, with discovery to be completed in less than six weeks and trial set to begin in approximately five months, without providing for dates for any pre-trial *Markman* claim construction or other patent-related proceedings.  *Id.*, ¶ 8, and Ex. F thereto.  In addition, the Florida court also recently denied, without explanation, a motion to stay filed on behalf of a number of the Florida defendants.  *Id.*, Ex. D.  In an opposition apparently filed by IPAT and Global to a different motion to dismiss and/or stay of the Florida action, filed by a different Florida defendant, IPAT and Global on the one hand seem to suggest that the software of the Texas defendants is not at issue in the Florida action ("Again, the patents include claims directed specifically to 'computer systems.' Asus makes and sells computer systems."); but at the same time seem to be purposefully ambiguous on this point ("Rather, Asus creates infringing computers by making and selling computer systems that include 'hardware ***and/or software*** for protecting and/or authenticating information.'") *Id.*, Ex. E, at pp. 1, 12.[3]  Of course, if and to the extent that the software of the Texas defendants is in fact at issue in the Florida action, nothing could be more prejudicial to the Texas defendants than to allow IPAT and Global to continue to prosecute the later filed Florida action, where they purposefully excluded the Texas defendants.  This would be the case regardless of the schedule adopted by the Court in Florida; however, the issuance of that schedule creates the need for immediate relief in this Court.

---

[3] In the same opposition, IPAT and Global identify "computers containing firewalls" as within the subject matter of the asserted patents.  Id., at pp. 1-2 and 6.  Moreover, in an email dated March 26, 2009, counsel for IPAT and Global for the first time identified a number of Symantec products that include firewalls – for example, Norton 360 and Norton Personal Firewall – as allegedly infringing products.  Flagel Decl., ¶ 9, and Ex. G thereto.  Those Symantec products have in fact been bundled with some of the computers sold by several of the defendants in the Florida action.  Flagel Decl., ¶ 9.  The same is believed to be true of the firewall products of a number of the other defendants in this action.

Given the circumstances, this Court should enjoin IPAT and Global from litigating the Florida action while this action is pending. This action is the first filed action. The later-filed Florida action is duplicative and creates the risk of inconsistent rulings, particularly given that a different court will be asked to construe the claims and determine the validity of the exact same patents at issue here in this earlier-filed action. Alternatively, this Court should enjoin IPAT and Global from pursuing infringement claims against the Florida defendants to the extent such claims depend on the bundling of Symantec's software products (or the software products of any of the other Texas defendants), in which case Symantec and the other Texas defendants are the "true" defendants with greater interests which should be resolved in this forum under applicable precedent.[4]

Due to the highly accelerated schedule just issued in the Florida action and the potential targeting of Symantec's and other Texas defendants' products in that action without naming Symantec or other Texas defendants as defendants in that later-filed action, Symantec respectfully requests expedited consideration of this motion.

## II. FACTUAL BACKGROUND

On December 30, 2008, IPAT initiated this action against Symantec and twenty other software manufacturers and a single hardware manufacturer. In relevant part, the Complaint alleges that: (1) IPAT is the assignee of United States Patent Nos. 5,311,591 ("the '591 patent") and 5,412,717 ("the '717 patent") (Compl. ¶ 1); (2) Symantec and the other Texas defendants "infringe one or more claims of the '591 and '717 patents by making, using, providing, offering

---

[4] It is extremely puzzling that IPAT would sue one group of defendants in the Eastern District of Texas, and then sue a different group of defendants on the very same patents two weeks later in the Southern District of Florida. This situation is only compounded by the fact that IPAT appears to be taking the position that to the extent software products of the defendants in the Texas action are bundled by any of the defendants in the Florida action, such software would be at issue in both actions.

to sell, and selling (directly or through intermediaries), in this district and elsewhere in the United States, hardware and/or software for protecting and/or authenticating information" (Compl. ¶¶ 30-51); and (3) Symantec and the other Texas defendants have "contributed to the infringement of one or more claims of the '591 and '717 patents, and/or actively induced others to infringe one or more claims of the '591 and '717 patents" (*Id.*).

On January 15, 2009, IPAT and Global filed an action in Florida in connection with the same patents against twelve computer manufacturers. In the Civil Cover Sheet submitted with the complaint in the Florida action, they disclosed this matter as a related case. *See* Flagel Decl. Ex. C. Most if not all of the computer manufacturers named in the Florida action purchase software products from one or more of the defendants in this action, including Symantec, and bundle that software as part of the computers they sell. The main allegations in the Florida complaint are essentially identical to the allegations in the complaint IPAT filed in this Court. Indeed, the Florida complaint also alleges that the Florida defendants "infringe one or more claims of the '591 and '717 patents by making, using, providing, offering to sell, and selling (directly or through intermediaries), in this district and elsewhere in the United States, hardware and/or software for protecting and/or authenticating information."

On February 11, 2009, in response to an inquiry by Symantec's counsel about the relatedness of the two cases, IPAT's counsel stated that to the extent the Florida defendants bundled into their offerings accused products of the defendants in this case, such products would likely be at issue in the Florida case as well. Flagel Decl. ¶ 3. Although neither complaint identifies specific Symantec (or any other) products that infringe, some of Symantec's products are indeed bundled in some instances with computers manufactured by several of the Florida defendants. Moreover, we now know that specific Symantec products that include firewalls, first

4

identified yesterday by IPAT and Global, have in fact been bundled with some of the computers sold by several of the Florida defendants. See note 3, *supra*; see also Flagel Decl., ¶ 9. The same is no doubt true as to the firewall products of the other defendants in this action.

On March 24, 2009, the Florida court denied a motion to stay that action, without providing any reasoning. Flagel Decl., Ex. D.[5] On March 20, 2009, the Florida court issued its Scheduling Order, setting a deadline of May 1, 2009 – less than six weeks away – to complete all discovery and a date of August 31, 2009 – approximately five months away – for the beginning of trial. *Id*, Ex. F. The Scheduling Order in the Florida action does not include any timeline for pre-trial *Markman* claim construction or any other patent-related proceedings.

### III.  LEGAL BACKGROUND

#### A.  First-to-File Rule

The first-to-file rule provides that "the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) (citing *Mann Mfg. Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)) (internal quotations omitted); *see also California Security Co-op, Inc. v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 317 (E.D. Tex. 1995) (Folsom, Ch. J.). Under the rule, the court with prior jurisdiction may enjoin the parties from litigating in the second suit. *See West Gulf*, 751 F.2d at 732; *Mann*, 439 F.2d at 407. In fact, "[t]he majority of cases in which litigation in another court of concurrent jurisdiction has been enjoined have involved situations where the same patent has been before several courts." *See*

---

[5] One day earlier, IPAT and Global filed their opposition to a different motion to dismiss and/or stay the action, filed by Asus Computer International, in which they were extremely ambiguous as to the relationship (or lack thereof) between the two actions. Flagel Decl. Ex. E, pp. 1, 11-13.

*Thermal Dynamics Corp. v. Union Carbide Corp.*, 214 F. Supp. 773, 775 (S.D.N.Y. 1963) (citing a string of Supreme Court and Courts of Appeals cases).

Courts routinely apply the first-to-file rule if the issues in the initial and subsequent actions are "duplicative" or "likely to overlap to a substantial degree." *See California Security*, 897 F. Supp. at 318 (internal quotations omitted). Courts have held that actions are duplicative if they involve the same patent owner litigating the same patents. *Interactive Music Technology, LLC v. Roland Corp. U.S.*, 2008 WL 245142, at *11 (E.D. Tex. Jan. 29, 2008).

There is no requirement under the first-to-file rule that the actions and parties "be identical." *California Security*, 897 F. Supp. at 318. Where the overlap between the actions "is less than complete," a court should consider such factors as the extent of the overlap and the likelihood of conflict. *Save Power Ltd v. Syntek Finance Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997) (citing *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). A court may also consider whether the prior action was disclosed on the civil cover sheet of the subsequent action. *Id.* at 951-52 (noting that this specific act "militat[es] in favor of" a finding that the actions are duplicative).

The main purpose of the first-to-file rule "is to avoid duplicative litigation." *California Security*, 897 F. Supp. at 317. In patent cases, the rule also serves to avoid the "untenable prospect" of conflicting claim constructions, which are highly relevant to issues of infringement and invalidity. *Interactive Music Technology*, 2008 WL 245142, at *11; *The Whistler Group, Inc. v. PNI Corp.*, 2003 U.S. Dist. LEXIS 21968, at *14 (N.D. Tex. Dec. 5, 2003); *see also KSR*

*Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1739 (2007) (noting that the need for "uniformity" in cases involving the validity of patents has long been recognized by the Supreme Court).[6]

### B. Customer-Suit Doctrine

Under the rationale of the customer-suit doctrine, which is controlled by Federal Circuit law, a patent owner may be enjoined from litigating an action against a manufacturer's customer in favor of an action against the manufacturer. *See Electronics For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005); *Ciena Corp. v. Nortel Networks, Inc.*, 2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005) (Davis, J.). The underlying principle behind this doctrine is that infringement determinations should be made in suits involving the "true defendant in the plaintiff's suit, *i.e.*, the party that controls the product's design, rather than in suits involving secondary parties, *e.g.*, mere customers. *Ciena*, 2005 WL 1189881, at *9 (*citing Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st. Cir. 1977)). The courts have recognized that "it is more efficient for the dispute to be settled directly between the parties in interest." *See Ricoh Co., Ltd v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) ("the manufacturer is presumed to have a greater interest in defending its actions against charges of patent infringement"); *see also Andco Environmental Processes, Inc. v. Niagara Environmental Associates, Inc.*, 211 U.S.P.Q. 544, 549 (W.D.N.Y. 1981) ("[w]here . . . the first suit is a suit against the manufacturer, there is little justification for allowing the second suit to take priority"). This court has specifically recognized that the rationale of the customer suit doctrine is not

---

[6] There are exceptions to the first-to-file rule, none of which are applicable here. The rule can be avoided with a showing of "compelling circumstances." *California Security*, 897 F. Supp. at 319. A party can show "compelling circumstances" if an alleged infringer files an anticipatory declaratory judgment action to deprive the patent owner from bringing suit in its home forum. *Id.* A party can also show "compelling circumstances" if a patentee files a first suit against an infringing manufacturer's customer, and the manufacturer brings a later-filed declaratory judgment action. *Ciena Corp. v. Nortel Networks, Inc.*, 2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005) (Davis, J.).

7

limited to mere customers. *See Ciena*, 2005 WL 1189881, at *9 (recognizing that "secondary parties," *e.g.*, secondary manufacturers that do not control the product's design, are similar to customers in the typical application of the customer-suit exception).

The primary inquiry under the doctrine is whether the resolution of the patent infringement and validity issues in the manufacturer's suit will advance or resolve these issues in the customer suit. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming the district court's order enjoining the plaintiff from further litigating his customer suit, because the manufacturer's patent suit would resolve the issues in the customer suit); *Ciena*, 2005 WL 1189881, at *9, 10 (applying the rationale of the customer-suit doctrine to enjoin the plaintiff from further litigating its later-filed ITC action against a secondary party, because the first-filed patent suit against the manufacturer would advance or resolve the patent dispute in the secondary-party ITC action).

## IV. DISCUSSION

### A. IPAT And Global Should Be Enjoined From Pursuing The Later-Filed Florida Action While This Case Is Pending Because It Is Duplicative And May Result In Inconsistent Rulings Under The First-To-File Rule

IPAT and Global should be enjoined from pursuing the duplicative action in Florida while this case – the first-filed case – is pending. Where two federal actions involve the same plaintiff litigating the same patents, courts have enjoined the parties from litigating the later-filed action. *See*, *e.g.*, *Mann*, 439 F.2d at 407 (affirming a Texas district court's order enjoining the parties from further litigating in New York a patent dispute first brought in the Texas court); *see also Interactive Music*, 2008 WL 245142, at *11 (applying first-to-file rule); *Whistler Group*, 2003 U.S. Dist. LEXIS 21968, at *14 (same).

By alleging infringement of identical patents in two separate actions with the same general allegations, IPAT and Global have presented this Court and the Florida court with "the

untenable prospect of infringement actions involving the same plaintiff litigating on the same patent[s] in two separate venues," which may result in "potential confusion on appeal, as it would lead to competing claim constructions." *Interactive Music*, 2008 WL 245142, at *11. Allowing IPAT and Global to proceed in Florida only creates a "heightened risk of inconsistent rulings which . . . promotes uncertainty." *Whistler Group*, 2003 U.S. Dist. LEXIS 21968, at *14. Moreover, when it filed the Florida action, IPAT and Global acknowledged on the civil cover sheet that this case is related, an act which itself "militat[es] in favor of" finding that the actions are duplicative. *Save Power*, 121 F.3d at 951-52.

Although this Court "is not in a position" to order the Florida action dismissed, stayed, or transferred, in order to prevent duplicative litigation proceedings and eliminate the risk of inconsistent rulings, as "the court initially seized of . . . [this duplicative] controversy," this Court can and should enjoin IPAT and Global from pursuing the Florida action while this action is pending. *California Security*, 897 F. Supp. at 316, 319; *Mann*, 439 F.2d at 407.

### B. IPAT And Global Should Be Enjoined From Asserting Infringement Against Symantec's Products In The Florida Action Under The Rationale Of The Customer- Suit Doctrine

Alternatively, even if this Court does not enjoin IPAT and Global entirely from pursuing their claims in the Florida action pending resolution of this action, this Court should enjoin them from asserting infringement against Symantec's products (or the products of any of the other Texas defendants) in the Florida action under the rationale of the customer-suit doctrine. Where a patent owner has filed separate patent infringement suits against a manufacturer and the manufacturer's customer, and the manufacturer's suit will advance or resolve these issues as to the customer suit, courts have consistently enjoined the plaintiff from further litigating the customer suit. *See, e.g.*, *Katz*, 909 F.2d at 1464 (affirming the district court's order enjoining the plaintiff from further litigating his customer suit, because the manufacturer's patent suit would

9

resolve the issues in the customer suit); *Ciena*, 2005 WL 1189881, at *9, 10 (applying the rationale of the customer-suit doctrine to enjoin the plaintiff from further litigating its later-filed ITC action against a secondary party, because the first-filed patent suit against the primary manufacturer would advance or resolve the patent dispute in the secondary-party ITC action); *Andco*, 211 U.S.P.Q. at 549-50 (applying the rationale of the customer-suit doctrine to enjoin the plaintiff from further litigating its later-filed customer suit in the interest of efficiency).

To the extent any of Symantec's bundled software serves as the basis for the infringement claims in the Florida action, those claims should be resolved in this action, where Symantec is the named defendant, and because Symantec is the "true" defendant in this litigation.[7] *See Ciena*, 2005 WL 1189881, at *9 (noting that for duplicative suits against a manufacturer and secondary parties, including secondary manufacturers, the "true" defendant is the party that controls the product's design). Symantec designs and develops any relevant Symantec software products at issue and therefore has the greater interest in defending them. Moreover, to the extent any of Symantec's bundled software serves as a basis for the allegations in the Florida

---

[7] The claims of the '591 and '717 patents are clearly directed at the functionality of software. For example, independent claim 1 of the '591 patent provides "a method for protecting a computer user from operations typically performable by a program while it is executing on behalf of a user, comprising the steps of: ***establishing*** a program authorizing information data structure for storing a plurality of authorization entries each indicating at least one of those computer resources and information processing related functions which may be used by an associated program; ***storing*** said program authorizing information data structure; and ***associating*** the program authorizing information data structure with at least one program to be executed by said computer system to thereby protect the computer user from operations that might be performed by said at least one program, whereby the program authorizing information is available to be monitored when its associated program is executed." The steps of "establishing," "storing" and "associating" are all actions performed by software. Although Symantec will vigorously contend in this action that there is no infringement of any valid claim, what is clear is that the accused software (which according to IPAT and Global seems to now focus on firewall functionality) will be a key determinant of all the relevant issues.

action, this action should significantly advance, and indeed resolve, those issues. *See Katz*, 909 F.2d at 1464.

      **C.**      **Expedited Consideration of this Motion is Needed Because of the Accelerated Schedule of the Florida Action**

The Scheduling Order in the Florida action sets a deadline of May 1, 2009 to complete all discovery and a date of August 31, 2009 for the beginning of trial. Under this highly accelerated schedule, discovery would need to be completed in less than six weeks, and the trial for the later-filed Florida action would be finished even *before* the initial Case Management Conference for this earlier-filed action in the Eastern District of Texas would even take place. Neither Symantec nor any other Texas defendant yet has a voice in that action, and were intentionally not named as defendants in that later-filed action. Given the highly accelerated schedule of the Florida action and the exclusion of the Texas defendants from that later-filed action, expedited consideration of this motion is warranted to provide meaningful relief to Symantec.

## V.    CONCLUSION

For the reasons set forth above, the Court should issue an order enjoining IPAT and Global from further litigating the Florida action pending resolution of this action. In the alternative, the Court should issue an order enjoining IPAT and Global from pursuing any claims in the Florida action against Symantec's (or any other Texas defendant's) products or based on or involving the bundling or use by any of the Florida defendants of any Symantec's (or other Texas defendant's) products. In addition, because of the highly accelerated schedule of the Florida action, Symantec respectfully requests expedited consideration of this motion.

Dated: March 27, 2009     Respectfully submitted,


*/s/ Diane V. DeVasto*
Michael E. Jones
State Bar. No. 19029400
mikejones@potterminton.com
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
Tel: (903) 597-8311
Fax: (903) 593-0846

Mark A. Flagel
mark.flagel @lw.com
Yury Kapgan
yury.kapgan@lw.com
Renny Hwang
renny.hwang@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles CA 90071-1560
Tel: (213) 485-1234
Fax: (213) 891-8763

**ATTORNEYS FOR DEFENDANTS AND COUNTERCLAIM PLAINTIFFS SYMANTEC CORPORATION AND PC TOOLS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 27th day of March 2009. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Diane V. DeVasto*
Diane V. DeVasto

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for the parties have complied with the meet and confer requirements of Local Rule CV-7(h), and the foregoing motion is opposed. On March 25, 2009, counsel for Defendant Mark Flagel conducted a meet and confer in good faith with counsel for Plaintiff William Davis via telephone conference. Discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Diane V. DeVasto*
Diane V. DeVasto